THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SCOTT A. CARROLL, Defendant-Appellant.

Fourth District    No. 4—94—0307

Opinion filed March 22, 1996.—Rehearing denied April 22, 1996.

Daniel D. Yuhas and Janieen R. Tarrance, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles Colburn, State's Attorney, of Jacksonville (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Following a jury trial, defendant Scott A. Carroll was convicted of first degree murder (720 ILCS 5/9—1(a)(2), (a)(3) (West 1992)) and sentenced to 60 years' imprisonment. Defendant appeals, contending he was denied a fair trial because the prosecutor improperly defined reasonable doubt during closing argument. We affirm.

At trial, Keith Wilson testified that around 8:45 p.m. on August 28, 1993, he walked with defendant and Gary Dean Thomas to William Doug Scoggins' Jacksonville home. There, the group smoked some marijuana. Approximately 30 minutes after Scoggins invited them inside, defendant pulled out a .22-caliber H&R nine-shot revolver and fired two shots into Scoggins' head. Scoggins had his back to defendant and was bent over to place his pet snake into its cage. Wilson witnessed Scoggins fall to the floor. Wilson ran into the kitchen. He heard additional shots fired, but he did not see who fired them. Defendant and Thomas joined Wilson in the kitchen and the three of them left Scoggins' home through the back door at approximately 9 p.m.

Albert Lynn Charlesworth testified that he and Wilson attended a barbecue at defendant's trailer home on Sunday afternoon, August 29, 1993. After they finished eating, defendant told Charlesworth that he had shot and killed Scoggins. Defendant stated that he, Thomas, and Wilson went to Scoggins' home and when Scoggins turned his back, he shot Scoggins twice in the back of the head with his .22-caliber nine-shot revolver. Thomas then took the gun and shot Scoggins once in the forehead. Defendant retrieved the gun and shot out Scoggins' eyes. Defendant and Thomas searched the house for valuables, then left with Wilson through the back door.

Charlesworth testified that the police contacted him after he had told his family that defendant had admitted shooting Scoggins. Charlesworth agreed to be fitted with an eavesdropping device, and on September 7, 1993, Charlesworth arranged to visit defendant at his home. The taped conversation of Charlesworth and defendant was entered into evidence. Defendant told Charlesworth that he had not seen Wilson since the police had taken him in for questioning and that he needed to talk to him. Defendant stated that Thomas could not say anything to the police because Thomas had shot Scoggins once in the forehead after defendant shot Scoggins twice "back here." Scoggins was still breathing after Thomas fired, so defendant "shot his eyeballs out." Defendant stated he tried to dispose of the gun in Alton but he could not get rid of it. Defendant admonished Charlesworth not to say anything about what he had heard because "nobody's going to jail [and] it's just going to be case closed."

Defendant was taken into custody shortly after the taped conversation. Defendant's cellmate, Jeff Sprague, testified that defendant told him an essentially identical account of the murder. However, defendant told Sprague that Jon Surratt drove Wilson, Thomas, and him to Scoggins' house. Surratt waited in the car while defendant, Wilson, and Thomas went inside to buy marijuana. When Scoggins produced a bag of marijuana, defendant and Thomas shot him in the manner previously described. After Sprague told the police about defendant's confession, Sprague's residential burglary charge was reduced to burglary. Sprague stated he was not offered the reduction in exchange for his testimony.

The physical evidence was consistent with Wilson's eyewitness account. Scoggins was found lying on his back next to his partially open snake cage. He had been shot five times with a .22-caliber weapon. There were two gunshot wounds to the back of Scoggins' head, one to the right side of his nose, one wound to his left lower eyelid, and one wound that actually pierced his right eyeball. The police did not release this information to the public. The police discovered a .22-caliber nine-shot H&R revolver hidden in a baby crib in defendant's trailer home. Grooves on the bullet fragments taken from Scoggins' skull were consistent with the rifling characteristics of this gun. Because of the mutilated condition of the bullet fragments, however, the gun could not be positively identified or eliminated as the weapon that fired the bullets into Scoggins' skull.

Defendant testified that he was only boasting when he claimed to have shot Scoggins. Defendant testified that on the night of the murder, he was with his girlfriend, Karrie Wilson, at Charlotte Wilson's Jacksonville house until 8 or 8:30 p.m. Around 8:30 p.m., Cathy Powell drove Karrie and defendant to defendant's home. Defendant's mother picked him up around 9:15 p.m. to take him to his brother's birthday party. Karrie's testimony agreed with defendant's account of the evening, and several witnesses testified they saw defendant arrive at the birthday party around 9:30 p.m. Cathy Powell, however, told the police that she did not drive defendant and Karrie home from Wilson's house until 9:30 or 10:30 p.m. She told police that Keith Wilson, Gary Dean Thomas, and defendant left Charlotte Wilson's home around 7:30 or 8 p.m.

In closing argument, the prosecutor stated:

> "Now, we need to prove beyond a reasonable doubt that this Defendant committed the offenses of first degree murder. It's not beyond all doubt or any doubt, but beyond a reasonable doubt, a doubt that has reason behind it. That's not some mythical, unattainable standard that can't be met. That standard is met every day in courtrooms ***."

After deliberating 2¹/₂ hours, the jury found defendant guilty of first degree murder.

On appeal, defendant argues that the prosecutor's remarks during closing argument improperly deemphasized the State's burden of proof. Defendant did not object during closing argument, and the State urges us to find the issue waived. However, this court has reviewed similar remarks under the plain error exception to the waiver doctrine because of their potential for undermining such fundamental concepts of justice as the defendant's presumption of innocence and the prosecution's burden of establishing beyond a reasonable doubt all elements of the charged offense. See *People v. Thomas*, 191 Ill. App. 3d 187, 197, 547 N.E.2d 735, 741 (1989).

■ The concept of reasonable doubt needs no definition, and it is prejudicial error for the court to give an involved instruction on that concept. *People v. Cagle*, 41 Ill. 2d 528, 536, 244 N.E.2d 200, 204 (1969); *People v. Failor*, 271 Ill. App. 3d 968, 970, 649 N.E.2d 1342, 1343 (1995). As with any instruction, it is for the court, not counsel, to explain the law to the jury. It is therefore improper for counsel to give an "instruction" on reasonable doubt during closing argument. *United States v. Kramer*, 711 F.2d 789, 794-95 (7th Cir. 1983). Nevertheless, counsel are entitled to discuss reasonable doubt during closing argument. The prosecutor is entitled to present his or her view of the evidence and to suggest that the evidence does not support any reasonable doubt; defense counsel is entitled to do the same and suggest there is a reasonable doubt. *Kramer*, 711 F.2d at 794-95; see also 75A Am. Jur. 2d *Trial* § 645 (1991).

■ A prosecutor may argue that the State does not have the burden of proving the guilt of the defendant beyond *any* doubt, that the doubt must be a reasonable one. Such an argument does no more than discuss the grammatical fact that the word "reasonable" modifies the word "doubt." *Cf. People v. Evans*, 199 Ill. App. 3d 330, 339, 556 N.E.2d 904, 909 (1990) (mild impropriety). It is improper, however, to suggest to the jury that the State had no burden of proof or to attempt to shift the burden to the defendant, or to reduce the State's burden to a *pro forma* or minor detail. *People v. Speight*, 153 Ill. 2d 365, 374, 606 N.E.2d 1174, 1177 (1992). It is improper for the prosecution to imply that the State's evidence enjoys a presumption of veracity which defendant must defeat or negate if he is to be acquitted. *Thomas*, 191 Ill. App. 3d at 196, 547 N.E.2d at 740-41 (" 'any doubt which you have which would defeat the State's theory I submit must be reasonable. It's got to fit together, it's got to make sense in light of all the other evidence in the case' "; remarks at least bordered on impropriety). It is improper for the prosecution to argue

that the presumption of innocence does not remain with defendant throughout every stage of the trial and during the jury's deliberations on the verdict. See Illinois Pattern Jury Instructions, Criminal, No. 2.03 (3d ed. 1992); *cf. People v. Eddington*, 129 Ill. App. 3d 745, 780, 473 N.E.2d 103, 127 (1984).

■ It is not improper for a prosecutor to argue:

" 'That is the same burden of proof in every case that is tried in this courtroom, every case that is tried in this county, and every case that is tried in this country. It is beyond a reasonable doubt. The penitentiary is full of people like Collins and Bracey who have been proved guilty beyond a reasonable doubt.' " *People v. Collins*, 106 Ill. 2d 237, 277, 478 N.E.2d 267, 284-85 (1985).

See also *People v. Harris*, 129 Ill. 2d 123, 161, 544 N.E.2d 357, 373 (1989). Nor is it error for a prosecutor to state that the standard is not " 'an insurmountable burden, some mystical thing.' " *People v. Trass*, 136 Ill. App. 3d 455, 467, 483 N.E.2d 567, 576-77 (1985).

The prosecutor's remarks in this case were not improper, and it would not have been error for the court to have overruled an objection to them if an objection had been made.

For the foregoing reasons, the judgment of the circuit court of Morgan County is affirmed.

Affirmed.

GARMAN and KNECHT, JJ., concur.