**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4498

ERIC ARTHUR WALTON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4537

ELDRIDGE MAYFIELD, a/k/a Sippy,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-96-41)

Argued: April 6, 1999

Decided: March 27, 2000

Before WILKINSON, Chief Judge, WIDENER, MURNAGHAN,
ERVIN,* WILKINS, NIEMEYER, LUTTIG, WILLIAMS,
MICHAEL, MOTZ, TRAXLER, and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

*Judge Ervin died while the case was under submission.

Affirmed by published per curiam opinion. Chief Judge Wilkinson and Judge Williams wrote concurring opinions. Judge Widener wrote a dissenting opinion. Judge King wrote a dissenting opinion, in which Judge Murnaghan, Judge Wilkins, and Judge Traxler joined. Senior Judge Hamilton wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Jay Thornton McCamic, MCCAMIC & MCCAMIC, Wheeling, West Virginia, for Appellant Walton; Gerald Grant Ashdown, WEST VIRGINIA UNIVERSITY SCHOOL OF LAW, Morgantown, West Virginia, for Appellant Mayfield. Paul Thomas Camilletti, Assistant United States Attorney, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Bren Pomponio, Student Attorney, WEST VIRGINIA UNIVERSITY SCHOOL OF LAW, Morgantown, West Virginia, for Appellant Mayfield. William D. Wilmoth, United States Attorney, Wheeling, West Virginia, for Appellee.

_____

**OPINION**

PER CURIAM:

This case came to be argued before the en banc court on April 6, 1999. The judgment of the district court is hereby affirmed by an equally divided en banc court. Separate opinions follow seriatim.

<u>AFFIRMED</u>

PREFATORY NOTE:

On April 6, 1999, the en banc court heard argument in this case. While the case was under submission, Judge Ervin died, leaving the judgment of the district court affirmed by an equally divided en banc court. Chief Judge Wilkinson, Judge Niemeyer, Judge Luttig, Judge Williams, and Judge Michael continue to concur in what Judge Ervin wrote. Judge Motz concurs in the judgment.

ERVIN, Circuit Judge:

The question before this Court is whether a district court must comply with a jury's request for a definition of reasonable doubt in a criminal trial. Our current practice is well-established. We have never required a district court to define reasonable doubt to a jury. See United States v. Reives, 15 F.3d 42, 46 (4th Cir. 1994), cert. denied, 512 U.S. 1207 (1994).

During its deliberations, the jury in the present case asked the district court for a definition of reasonable doubt. In accordance with our longstanding practice, the district court refused. On appeal, a panel of this Court affirmed.[1]

We granted a rehearing en banc in this case to reconsider this issue. Finding no reason to change our current practice, we affirm.

I.

Eric A. Walton and Eldridge Mayfield (the "Defendants") were convicted by a jury for conspiracy to influence a petit juror and for aiding and abetting in the attempt to influence a petit juror. See 18 U.S.C.A. §§ 2 (West 1969), 371 (West 1966 & Supp. 1999), 1503(a), (b)(3) (Supp. 1999). During its deliberations, the jury asked the district court for a definition of reasonable doubt. The district court refused.

On appeal, the Defendants argued that, because the jury may have been confused over the burden of proof and, therefore, may have convicted the Defendants upon a lesser showing than required by due process, the district court should have defined reasonable doubt for the jury. In support, the Defendants argued that our opinion in United States v. Oriakhi, 57 F.3d 1290 (4th Cir. 1995), compelled such a result.

_____

[1] The original panel opinion was unpublished. See United States v. Walton, 166 F.3d 336 (4th Cir. 1998) (Table). The full text of this opinion has been reproduced in United States v. Walton, Nos. 97-4498, 97-4537, 1998 WL 879650 (4th Cir. Dec. 17, 1998) (per curiam).

3

A panel of this Court rejected the Defendants' argument, holding that "[t]he rule regarding reasonable doubt for the jury is well settled in this Circuit--a trial judge may define reasonable doubt only if the jury requests a definition; however, the trial judge is not required to provide a definition, even if the jury requests it." Walton, 1998 WL 879650, at *4. Finding "nothing in Oriakhi overruling or creating exceptions to the rule," id. at *5, the panel affirmed the Defendants' conviction.

Subsequently, the Defendants submitted a petition for rehearing en banc to this Court. The only issue raised in this petition was whether a district court should give a jury an instruction on the definition of reasonable doubt when requested. Granting the petition, we elected to rehear this case en banc.

II.

The issue before this Court is whether a district court should be required to give an instruction defining reasonable doubt when requested by a jury. This is a question of law that we review de novo. See United States v. Singh, 54 F.3d 1182, 1189 (4th Cir. 1995).

There is no constitutional requirement to define reasonable doubt to a jury. The Supreme Court has never required trial courts to define the term. In its most recent case addressing reasonable doubt, the Court stated that

> the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.

Victor v. Nebraska, 511 U.S. 1, 5 (1994) (citations omitted).**2** The
_____
**2** As Justice Ginsburg observed in her concurrence in Victor, this statement from the majority opinion could be considered dictum because in

4

Court has even recognized that "[a]ttempts to explain the term `reasonable doubt' do not usually result in making it any clearer to the minds of the jury." Holland v. United States , 348 U.S. 121, 140 (1954) (citation omitted).

As the panel observed in its original opinion, the well-established rule of this Circuit is that although the district court may define reasonable doubt to a jury upon request, the district court is not required to do so. Walton, 1998 WL 879650, at *4. According to our research, the First, Seventh, Ninth, and District of Columbia Circuits share our unwillingness to require the district court to define reasonable doubt.[3]

_____

both consolidated cases the trial judges defined reasonable doubt. The question of whether a definition of reasonable doubt was constitutionally required, therefore, was not squarely before the Court. See Victor, 511 U.S. at 26 (Ginsburg, J., concurring in part and concurring with the judgment). But see Hopt v. Utah, 120 U.S. 430, 440 (1887) (commenting that a jury instruction refusing to define reasonable doubt further "is simple, and as a rule to guide the jury is as intelligible to them generally as any which could be stated . . .").

**3 See United States v. Smith**, 46 F.3d 1223, 1238 (1st Cir. 1995) (holding that "district courts need not define the concept of reasonable doubt so long as the phrase is not buried as an aside"); United States v. Blackburn, 992 F.2d 666, 668 (7th Cir. 1993) (upholding a district court's refusal to define reasonable doubt even after a jury's request); United States v. Taylor, 997 F.2d 1551, 1557 (D.C. Cir. 1993) (holding that "a District Court need not give any definition of reasonable doubt at all"); United States v. Nolasco, 926 F.2d 869, 872 (9th Cir. 1991) (en banc) (holding that "an appropriate instruction defining reasonable doubt is permissible but not necessarily required").

The status of reasonable doubt jury instructions in the Fifth and Sixth Circuits remains unclear. Although in Thompson v. Lynaugh the Fifth Circuit stated that "attempts by trial courts to define `reasonable doubt' have been disfavored by this court," 821 F.2d 1054, 1061 (5th Cir. 1987), Thompson is distinguishable because it concerned a state collateral attack. Id. at 1055. See also United States v. Williams, 20 F.3d 125, 128 (5th Cir. 1994) (noting that the Fifth Circuit has never "required a particular definition of reasonable doubt to be read to the jury"). Likewise, the Sixth Circuit's District Judges Association commented:

5

At least fifteen state courts also appear not to require a trial court to define reasonable doubt to a jury.**4** In addition, the foreign courts of

_____

> Some Sixth Circuit decisions have sustained state criminal convictions against constitutional attacks based on the trial court's failure to define the term reasonable doubt. Other Sixth Circuit decisions have noted in dicta the Supreme Court's statement that attempts to define reasonable doubt do not usually make the term more understandable. But no Sixth Circuit decisions reviewing federal criminal convictions have explicitly discouraged or condemned instructions defining reasonable doubt, as some other circuits have done.
>
> Instead, Sixth Circuit decisions have rather consistently proceeded on the assumption that some definition should be given, with the only real question being what the definition should say.

Committee on Pattern Crim. Jury Instructions, District Judges Ass'n, Sixth Circuit, Pattern Crim. Jury Instructions § 1.03 (1991) (citations omitted).

**4** See La. Code Crim. Proc. Ann. art. 804A(3) (West 1998) ("The court may, but is not required to, define . . . `reasonable doubt.' "); Ky. R. Crim. P. § 9.56(2) ("The instructions should not attempt to define the term `reasonable doubt.'"); People v. Carroll, 663 N.E.2d 458, 460 (Ill. App. Ct. 1996) ("The concept of reasonable doubt needs no definition, and it is prejudicial error for the court to give an involved instruction on that concept."); Chase v. State, 645 So.2d 829, 850 (Miss. 1994) ("reasonable doubt defines itself and needs no further definition by the court"); State v. Johnson, 445 S.E.2d 637, 637 (S.C. 1994) (upholding a trial court's refusal to define reasonable doubt, commenting that the expression "without an explanation of its legal significance is much more favorable to a defendant"); State v. McMahon , 603 A.2d 1128, 1129 (Vt. 1992) ("We have never held that a defendant is entitled to an explanation of `reasonable doubt'. . ."); Means v. Sidiropolis, 401 S.E.2d 447, 451 n.1 (W. Va. 1990) ("We have made it clear that a jury instruction attempting to define `reasonable doubt' probably confuses the jury more than it helps it."); Grant v. State, 703 P.2d 943, 946 (Okla. Crim. App. 1985) ("The long standing rule in this jurisdiction is that trial judges should not define the term."); State v. Burton, 681 P.2d 646, 655 (Kan. 1984) ("This court has consistently adhered to the position that no definition could make the concept of `reasonable doubt' any clearer than the words themselves."); State v. Olkon, 299 N.W.2d 89, 105 (Minn. 1980)

6

England and Australia -- with which we share a common lineage, the right to trial by jury, and the standard of proof beyond a reasonable doubt in criminal trials -- also do not require trial courts to define reasonable doubt to a jury.**5**

The rationale behind this rule is "our belief that efforts to define reasonable doubt are likely to confuse rather than clarify the concept. . . ." <u>United States v. Williams</u>, 152 F.3d 294, 298 (4th Cir. 1998). We are convinced "that the term reasonable doubt has a self-evident meaning comprehensible to the lay juror which judicial efforts to define generally do more to obscure than to illuminate." <u>United States v. Headspeth</u>, 852 F.2d 753, 755 (4th Cir. 1988) (citation omitted),

---

("Defining the term should be at the option of the trial judge even though a defining instruction is tendered. Lack of definition would not appear to be prejudicial."); <u>Cosco v. State</u>, 521 P.2d 1345, 1346 (Wy. 1974) (holding that "the term `reasonable doubt' need not be defined and a trial court would be well-advised to avoid instructions on reasonable doubt"); <u>Spurlin v. State</u>, 149 S.E.2d 315, 318 (Ga. 1966) (affirming trial court's refusal to define reasonable doubt); <u>State v. Robinson</u>, 385 P.2d 754, 756 (Or. 1963) ("While it is doubtful if a definition is necessary, attempts to define the term are not error for that reason."); <u>City of Sioux Falls v. Wolf</u>, 114 N.W.2d 100, 101 (S.D. 1962) ("The term `reasonable doubt' needs no definition. It means what it says.") (citation omitted); <u>Strawderman v. Commonwealth</u>, 108 S.E.2d 376, 379 (Va. 1959) (commenting "that instructions attempting to define reasonable doubt should be discouraged as it is highly probable that any definition devised would be less illuminating than the expression itself").

**5** <u>See</u> Thomas V. Mulrine, <u>Reasonable Doubt: How in the World Is It Defined?</u>, 12 Am. U. J. Int'l L. & Pol'y 195, 217-18 (1997), <u>citing</u> <u>Regina v. Ching</u>, 63 Crim. App. 7, 10 (Eng. 1976) (warning trial judges not to attempt to put "any gloss on what is meant by . . . `reasonable doubt'"); <u>The Queen v. Bilick</u>, 36 S.A. St. R. 321 (Austl. 1984) (stating that "[a]n attempt to characterize a reasonable doubt is a misdirection"). For an examination of the joint Anglo-American origins of the "beyond a reasonable doubt" standard, <u>see generally</u> Barbara J. Shapiro, <u>`To a Moral Certainty': Theories of Knowledge and Anglo-American Juries, 1600-1850</u>, 38 Hastings L.J. 153 (1986); Anthony A. Morano, <u>A Reexamination of the Development of the Reasonable Doubt Rule</u>, 55 B.U. L. Rev. 507, 508 (1975).

overruled on other grounds by <u>Taylor v. United States</u>, 495 U.S. 575, 597 (1990).**6**

This rationale is challenged when, as in the present case, a jury specifically requests a definition of reasonable doubt. We understand that when a jury specifically requests a definition of reasonable doubt during deliberations, there is a risk that the jury may be confused over what standard of proof to apply in a criminal case. At the same time, we also appreciate the constitutionally-mandated importance of the reasonable doubt standard in a criminal trial. <u>See In re Winship</u>, 397 U.S. 358, 362 (1970) ("Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required."). Nevertheless, we remain convinced that attempting to explain the words "beyond a reasonable doubt" is more dangerous than leaving a jury to wrestle with only the words themselves.**7**

_____

**6** The United States District Court for the District of Massachusetts summarized this belief as "a basic philosophical precept that the concept of reasonable doubt has an <u>a priori</u> existence in the minds of all jurors." <u>Smith v. Butler</u>, 696 F. Supp. 748, 765 (D. Mass. 1988). Chief Judge Posner of the Seventh Circuit commented that "deeply entrenched in the popular culture as it is, the term `beyond a reasonable doubt' may be the single legal term that jurors understand best." <u>United States v. Hall</u>, 854 F.2d 1036, 1044 (7th Cir. 1988) (Posner, J., concurring).

**7** The Seventh Circuit analogized defining reasonable doubt to a jury to "playing with fire." <u>United States v. Shaffner</u>, 524 F.2d 1021, 1023 (7th Cir. 1975). It recognized that "at best, definitions of reasonable doubt are unhelpful to a jury, and, at worst, they have the potential to impair a defendant's constitutional right to have the government prove each element beyond a reasonable doubt." <u>Hall</u>, 854 F.2d at 1039. As the United States Supreme Court noted in <u>Victor</u>, reasonable doubt "defies easy explanation." 511 U.S. at 5.

The Supreme Court of New Hampshire observed that reasonable doubt jury instructions often result in a "grand conglomeration of garbled verbiage and verbal garbage." <u>State v. Aubert</u> , 421 A.2d 124, 127 (N.H. 1980) (citation omitted). While we believe that the jury instructions we have examined were more artfully drafted than that, we still did not find any of them clearer than the words themselves. <u>See</u> Edward J. Devitt et al., <u>Federal Jury Practice and Instructions: Civil and Criminal</u> § 12.10

In the end, only a jury can truly define reasonable doubt. Reasonable doubt cannot be divorced from its specific context any more than the concepts of "reason" or a "reasonable person." Jurors differ in their own individual conceptions of reasonable doubt. During jury deliberations, these jurors debate whether or not the prosecution in the specific case before them has proven the guilt of a particular defendant beyond a reasonable doubt. Through "the community participation and shared responsibility that results from that group's determination of guilt or innocence," Williams v. Florida, 399 U.S. 78, 100 (1970), the jury itself defines reasonable doubt and applies its own definition to the specific case before it.

The only definition of the standard of proof in criminal cases required by the Supreme Court remains "the necessity of proof beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 320 n.14 (1979). While we discourage further definition of the reasonable doubt standard, see Williams, 152 F.3d at 298, we continue to leave the final decision of whether to acquiesce to a jury's request and define reasonable doubt to the district court's discretion. See United States v. Patterson, 150 F.3d 382, 389 (4th Cir. 1998). Given the inherent risks, however, we refuse to require such a practice.

III.

Accordingly, since we find no reason to alter our current practice of not requiring a jury instruction defining reasonable doubt in criminal cases, we affirm the judgment of the district court.

_____

(4th ed. 1992 & Supp. 1998) (collecting federal reasonable doubt jury instructions); 5 Edward R. Branson, The Law of Instructions to Juries in Civil and Criminal Cases § 3308 (3d ed. 1962 & Supp. 1997) (collecting state reasonable doubt jury instructions). Dean John Henry Wigmore expressed this sentiment earlier when he wrote,"The truth is that no one has yet invented or discovered a mode of measurement for the intensity of human belief. Hence there can be yet no successful method of communicating intelligibly to a jury a sound method of self-analysis for one's belief." 9 John H. Wigmore, Evidence in Trials at Common Law § 2497 (Chadbourn rev. 1981).

9

WILKINSON, Chief Judge, concurring:

One picture can be worth a thousand words. And fewer words are sometimes better than many. So it is with "reasonable doubt." The majesty of the term has always been its brevity. It is not at all a bad thing for a jury to be left to work through its meaning. With longer instructions, one cannot tell which part the ear will choose to hear or the mind to accentuate. And that can make all the difference.

The principal dissent's proposed instruction further illustrates the point that different is not always better. Though accompanied by much verbal fanfare, all it does is substitute for"reasonable doubt" the equally capacious term "not firmly convinced." This is to do nothing more than restate the traditional constitutional formulation with verbiage that carries uncertain connotations. Indeed, I can see either the prosecution or the defense thinking that this reformulation works to its detriment. From the standpoint of the prosecution, the "not firmly convinced" standard appears to require virtual certainty from jurors before they may vote to convict. From the standpoint of the defense, the "reasonable doubt" standard encourages the jury to adopt a reflective and deliberative state of mind, while the "not firmly convinced" standard may require only that the jury be sufficiently opinionated. The cure proposed by the dissent may thus be worse than the disease. The district court acted within its discretion in avoiding this danger.

I would affirm the judgment.

WILLIAMS, Circuit Judge, concurring:

I concur in Judge Ervin's opinion. When a criminal jury requests the district court to define reasonable doubt, the district court must have discretion to decide whether to provide such a definition. Should the district court determine that a definition of reasonable doubt is necessary to remove jury confusion about the proper standard of proof, I believe that the definitions suggested by the dissenters would be adequate. The mere act of a jury requesting a definition of reasonable doubt, however, does not alone demonstrate jury confusion and there is no evidence in this case from which to infer that the jury applied a constitutionally inadequate standard of proof. Cf. Weeks v.

10

Angelone, No. 99-5746, 2000 WL 33524, at *5-*6 (U.S. Jan. 19, 2000) (explaining that the jury's request for clarification of an instruction was insufficient to demonstrate that the jury applied an incorrect legal standard where the trial court referred the jury back to the original, constitutionally adequate instruction).

WIDENER, Circuit Judge, dissenting:

I join in all of Judge King's dissenting opinion except part III thereof. I would give the following instruction:

> Proof beyond a reasonable doubt is such as you would be willing to rely and act upon without hesitation in the most important of your own affairs.

This instruction, in almost the same words, has been approved by the Second Circuit. See United States v. Birbal , 62 F.3d 456, 459-460 (2d Cir. 1995). More importantly, a similar instruction emphasizing the use of the word hesitate was suggested by the Supreme Court as providing a clearer definition of reasonable doubt in Holland v. United States, 348 U.S. 121, 140 (1954).

KING, Circuit Judge, dissenting:

The question before us today is whether a district court should respond to a request from a criminal trial jury with an instruction defining reasonable doubt. We reheard this case en banc to reconsider our position in this regard. I write separately because I believe it is inappropriate to deny a criminal jury an explanation of reasonable doubt when the jury has explicitly requested a definition.

The bases for my view, explained more fully below, are: (1) proof beyond a reasonable doubt is fundamental to our criminal justice system; (2) a trial court should assist a jury in every way possible in the fulfillment of its obligations; and (3) the term"reasonable doubt" can be defined in a manner readily understood by, and of assistance to, a trial jury. I would require a reasonable doubt instruction be given when the jury requests a definition, and I propose an instruction substantially similar to that advocated by the Federal Judicial Center

11

("FJC"). Because I find error in the district court's failure in this case to define reasonable doubt in response to the jury's request, I respectfully dissent.

I.

While long a fundamental principle of our criminal justice system, it was not until 1970 that the Supreme Court expressly afforded constitutional stature to the reasonable doubt concept. See In re Winship, 397 U.S. 358, 364 (1970). In Winship, the Court held that the due process mandates of the Fifth and Fourteenth Amendments require that every element of a charged offense be proved beyond a reasonable doubt. Id. In so holding, the Court emphasized the importance of the reasonable doubt standard in our criminal justice system:

> The [reasonable doubt] standard provides concrete substance for the presumption of innocence -- that bedrock "axiomatic and elementary" principle whose"enforcement lies at the foundation of the administration of our criminal law."

Id. at 363 (quoting Coffin v. United States, 156 U.S. 432, 453 (1895)).[1] Recognizing the fundamental unfairness that would result from permitting a criminal defendant to be convicted and imprisoned on the lesser standard of proof sufficient in civil cases, the Court explained the rationale underlying the reasonable doubt standard applicable in a criminal prosecution:

> The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for

_____

[1] Due process is satisfied by nothing less than a juror's understanding that he or she may not vote to convict a defendant based upon a belief "that the defendant is probably guilty. . . ." United States v. Hernandez, 176 F.3d 719, 728 (3d Cir. 1999) (quoting Sullivan v. Louisiana, 508 U.S. 275, 278(1993))(emphasis added).

12

> commission of a crime when there is reasonable doubt about his guilt.

Winship, 397 U.S. at 363-64. Echoing these sentiments, the concurring opinion of Justice Harlan in Winship provides perhaps the most persuasive justification for the Court's decision:"I view the requirement of proof beyond a reasonable doubt in a criminal case as bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." Id. at 372 (Harlan, J., concurring).

## II.

Although it has explicitly held that the reasonable doubt standard is mandated by due process, the Supreme Court, subsequent to its 1970 Winship decision, has offered little guidance as to if, when, or how the concept of reasonable doubt should be defined for a criminal jury. Indeed, as Judge Ervin's opinion points out, ante at 4, the Court has never required trial courts to define reasonable doubt. Neither, however, has the Court ever ruled that the concept of reasonable doubt is incapable of definition, or that trial courts should not, as a matter of course, provide a definition. Victor v. Nebraska, 511 U.S. 1, 26 (1994) (Ginsburg, J., concurring in part and concurring in the judgment).

Though we have never insisted that district courts in this Circuit define reasonable doubt, we have historically accorded them the discretion to provide a definition when the jury asks for one.**2** According

_____

**2 See e.g.,** United States v. Adkins, 937 F.2d 947, 950 (4th Cir. 1991) ("The only exception to our categorical disdain for definition is when the jury specifically requests it."); United States v. Ricks, 882 F.2d 885, 894 n.12 (4th Cir. 1989) (noting the "limited exception to our general proscription in those cases where jurors are demonstrably confused or uncertain . . .") (citing Murphy v. Holland, 776 F.2d 470, 475 (4th Cir. 1985)); United States v. Russell, 971 F.2d 1098, 1108 (4th Cir. 1992) (construing Ricks to suggest that reasonable doubt should be defined when "the jury is `demonstrably confused or uncertain' and requests such an instruction"); United States v. Headspeth, 852 F.2d 753, 755 (4th Cir. 1988) ("We have frequently admonished district courts not to attempt to define

13

to Judge Ervin, we should not require district courts to define reasonable doubt because the term "has a self-evident meaning comprehensible to the lay juror which judicial efforts to define generally do more to obscure than to illuminate." Ante at 7 (quoting Headspeth, 852 F.2d at 755, see supra note 2 (citation omitted)). However, the persuasiveness of this reasoning is substantially undermined in instances, such as here, where the jury itself has entreated the district court to define reasonable doubt. As my distinguished former colleague acknowledged, "[w]e understand that when a jury specifically requests a definition of reasonable doubt during deliberations, there is a risk that the jury may be confused over what standard of proof to apply in a criminal case."**3** Ante at 8.

The meaning of "reasonable doubt" is not as overwhelmingly evident to lay jurors as some courts have assumed. Though each word in the term appears regularly in common parlance, they do not, when coupled without further explanation, "necessarily convey the high standard of proof that the due process clause requires." United States v. Nolasco, 926 F.2d 869, 873 (9th Cir. 1991) (Wiggins, J., dissenting) (citation omitted).**4** The potential for confusion among jurors is

_____

reasonable doubt in their instructions to the jury absent a specific request from the jury itself."), overruled on other grounds by Taylor v. United States, 495 U.S. 575, 597 (1990); United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987) ("This court has urged trial courts to avoid defining reasonable doubt unless requested to do so by the jury . . .").
**3 See also** Henry A. Diamond, Reasonable Doubt: To Define, Or Not To Define, 90 Colum. L. Rev. 1716, 1723-24 (1990) ("A jury's request for a definition of reasonable doubt must be an indication that it does not understand what the term means."), cited in Victor, 511 U.S. at 26 (Ginsburg, J., concurring in part and concurring in the judgment).
**4 See also** Jessica N. Cohen, The Reasonable Doubt Jury Instruction: Giving Meaning To A Critical Concept, 22 Am. J. Crim. L. 677, 688-89 (1995) ("[A]lthough reasonable doubt is not a Latin term like res ipsa loquitur or a technical term like `accessory after the fact' or `aider and abettor,' it is more than merely the sum of the two common words `reasonable' and `doubt.' It is a legal term of art.").

Moreover, the fact that certain words are commonly used should not otherwise prevent them from being defined for the jury. Jury instructions frequently define simple words and phrases that are part of the everyday lexicon of the average lay juror, such as "attempt," "knowingly," "agreement," and "conspiracy." Cohen at 690 (citations omitted).

14

poignantly illustrated by the acknowledged reality that trial judges, despite their extensive legal training and professional experience, themselves often have difficulty articulating the meaning of reasonable doubt. Simply put, if "judges and legal scholars struggle to define reasonable doubt, it is unrealistic to expect a lay jury to properly grasp and apply the stark words." State v. Portillo, 898 P.2d 970, 973 (Ariz. 1995).

Nevertheless, despite the potential for juror confusion, Judge Ervin concluded that attempts to define reasonable doubt are "more dangerous than leaving a jury to wrestle with only the words themselves." Ante at 8. With all respect to the experience and acumen of this eminent jurist, I disagree. In my view, it serves little purpose to instruct the average juror that she must be convinced of guilt beyond a "reasonable doubt," absent some intelligent elaboration on the meaning of the term.[5] One of a trial judge's most important responsibilities is to assist jurors with their understanding of applicable legal principles. See United States v. Lewis, 53 F.3d 29, 34 (4th Cir. 1995) ("The purpose of jury instructions is to instruct the jury clearly regarding the law to be applied in the case.") (citations omitted). Without sufficient instruction, "the jury becomes mired in a factual morass, unable to draw the appropriate legal conclusions based on those facts." Id. The failure of a trial court to offer a definition of reasonable doubt, after the jury has requested assistance with the term, is an abdication of its responsibility.

The positions taken by some of our sister circuits strongly support the view that reasonable doubt should, at least in some circumstances, be defined. In Blatt v. United States, 60 F.2d at 481 (3d Cir. 1932), the Third Circuit held that the failure to define reasonable doubt constituted "error prejudicial to the defendant." Sixty years later, in United States v. Polan, 970 F.2d 1280, 1286 n.4 (3d Cir. 1992), the

_____

[5] See Jackson v. Virginia, 443 U.S. 307, 316-17 (1979) (ruling that simply instructing a jury to apply the reasonable doubt standard does not satisfy the constitutional mandate of Winship; the Winship doctrine requires more than merely a trial ritual). As Judge Wiggins made plain in his dissent in Nolasco, "[s]imple repetition of the phrase `beyond a reasonable doubt' does not adequately communicate to jurors the degree to which they must be convinced." 926 F.2d at 874 (Wiggins, J., dissenting).

15

Third Circuit adhered to <u>Blatt</u> by approving a "model" instruction that included a definition of reasonable doubt. Similarly, in <u>Friedman v. United States</u>, 381 F.2d 155, 160 (8th Cir. 1967), the Eighth Circuit held that the failure to define reasonable doubt upon request by the defendant would constitute error. Additionally, the Eighth Circuit has approved a set of model jury instructions that include a definition of reasonable doubt. <u>United States v. Harris</u>, 974 F.2d 84, 85-86 (8th Cir. 1992). The Tenth Circuit has also concluded that jurors should be instructed on the meaning of reasonable doubt. <u>See Holland v. United States</u>, 209 F.2d 516, 523 (10th Cir. 1954) (holding that the accused is entitled to a definition of reasonable doubt); <u>see also</u> <u>United States v. Pepe</u>, 501 F.2d 1142, 1143 (10th Cir. 1974) (concluding that defendants are entitled to have the meaning of reasonable doubt explained to the jury).

The rule in these three circuits is more stringent than the modest one I espouse today. I do not maintain that the jury must always be instructed on the meaning of reasonable doubt, or even that -- as a prophylactic measure -- a trial court must accede to the defendant's request for such an instruction. I merely say that, when the jury's confusion is demonstrably palpable, <u>i.e.</u>, the jury has requested that reasonable doubt be defined, a real danger exists that the defendant may be convicted on less than the certainty demanded by the Constitution. Accordingly, in that circumstance, I would require the presiding judge to guide the jury down the appropriate path by defining reasonable doubt.**6**

_____

**6** Hypothetically, there are several scenarios in which a definition of reasonable doubt might be given. For example, (1) district courts could define reasonable doubt as a matter of course in all criminal cases; (2) district courts could give such an instruction at the request of either party; (3) such an instruction could be required only in response to a request from a defendant; or (4) a definition of reasonable doubt could be given when the jury's confusion leads it to request one.

As noted, our review today is limited to the fourth scenario: whether a district court should define reasonable doubt when requested to do so by a criminal jury. I would reserve for another day questions as to whether reasonable doubt should be defined under other circumstances.

16

In addition, the position of the Fifth Circuit is not quite as muddled as has been suggested. Admittedly, in Thompson v. Lynaugh, 821 F.2d 1054, 1061 (5th Cir. 1987), that court broadly stated that attempts to define reasonable doubt are disfavored. However, it is acknowledged that Thompson is distinguishable because it involved a state collateral attack, rather than a direct appeal. Ante at 5 n.3. Accordingly, Thompson should not be construed as the Fifth Circuit's adoption of a strict "no-definition" rule. To the contrary, the Fifth Circuit has indicated that reasonable doubt should be defined. See United States v. Williams, 20 F.3d 125, 128-29 nn.1-2 (5th Cir. 1994) (observing that "in contrast" to those circuits that discourage defining reasonable doubt, it has repeatedly encouraged district courts to do so).

In the Sixth Circuit, the status of instructions defining reasonable doubt is not completely clear. As has been noted, the District Judges Association of the Sixth Circuit, in promulgating model instructions defining reasonable doubt, indicated that:

> Sixth Circuit decisions have rather consistently proceeded on the assumption that some definition should be given, with the only real question being what the definition should say.

Ante at 6 n.3 (citation omitted). While the model instructions were subsequently approved, see United States v. Goodlett, 3 F.3d 976, 979 (6th Cir. 1993), the Sixth Circuit has not explicitly required district courts to define reasonable doubt.

The considerable legal support in the federal courts for defining the concept of reasonable doubt is well-grounded in reality, empirical studies having demonstrated that juries often do not understand what the phrase means.[7] As Justice Ginsburg stated in her concurring opin-

_____

[7] See, e.g., N.L. Kerr, et al., Guilt Beyond a Reasonable Doubt: Effects of Concept Definition and Assigned Decision Rule on the Judgment of Mock Jurors, 34 J. Personality & Soc. Psychology 282, 292 (1976). In this study, the results of mock trials demonstrated that there was greater uncertainty among individual jurors and more disagreement within the

17

ion in <u>Victor</u>, "[s]everal studies of jury behavior have concluded that `jurors are often confused about the meaning of reasonable doubt' when that term is left undefined." 511 U.S. at 26 (Ginsburg, J., concurring in part and concurring in the judgment) (quoting Henry Diamond, <u>Reasonable Doubt: To Define, Or Not To Define</u>, 90 Colum. L. Rev. 1716, 1723 (1990) (citations omitted)). The danger of such confusion is that it increases the likelihood of an unjust result, <u>i.e.,</u> that jurors may vote to convict on less than the constitutionally required standard of proof, or that jurors may vote to acquit when the proper result is to convict.

III.

In declining to require trial judges to define reasonable doubt under the circumstances of this case, five of my colleagues conclude that the concept is incapable of being defined clearly, and that attempting to define it would only further confuse the jury.**8** I am unpersuaded.

_____

jury as a whole when reasonable doubt was not defined, and that more deadlocked juries resulted.

In another study, D.U. Strawn & R.W. Buchanan, <u>Jury Confusion: A Threat to Justice</u>, 59 Judicature 478, 480-81 (1976), researchers conducted a series of studies on jurors in Florida and collected the following data: twenty-three percent believed that when the evidence was evenly balanced between guilt and innocence, the defendant should be convicted; only fifty percent understood that the defendant did not have to present any evidence of his innocence; two percent thought the burden of proving innocence rested on the defendant. Based on these findings, the authors concluded in a subsequent article that jurors should be advised that certain phrases in instructions do not have their ordinary meaning, but instead have specific legal meaning, including "burden of proof" and "reasonable doubt". D.U. Strawn, et al., <u>Reaching a Verdict, Step by Step</u>, 60 Judicature 383, 387 (1977).

**8** In support of this determination, Judge Ervin points to our decision in <u>United States v. Williams</u>, 152 F.3d 294, 298 (4th Cir. 1998), where we wrote that "efforts to define reasonable doubt are likely to confuse rather than clarify the concept. . . ." However, this language does not necessarily indicate that the term is incapable of definition or that a proper definition should not be given. Indeed, notwithstanding our tradi-

18

Admittedly, reasonable doubt is not a precise concept. Nevertheless, "even if definitions of reasonable doubt are necessarily imperfect, the alternative -- refusing to define the concept at all -- is obviously not preferable." Victor v. Nebraska, 511 U.S. at 26 (Ginsburg, J., concurring in part and concurring in the judgment). Despite its somewhat nebulous nature, I am convinced that reasonable doubt can be defined in simple terms that are readily understood by -- and of assistance to -- a criminal jury.

I find such simplicity and clarity to be embodied in the definition of reasonable doubt approved in 1987 by the FJC. This succinct instruction was discussed with approval by Justice Ginsburg in her concurring opinion in Victor. I propose today a slightly modified version of the FJC definition, providing as follows:

> The government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your con-

_____

tional skepticism of defining reasonable doubt, we have approved of some of the definitions offered by trial courts. See, e.g., United States v. Love, 767 F.2d 1052, 1060 (4th Cir. 1985) (while arguing that reasonable doubt definitions only confuse juries, we wrote,"In no way [was the definition offered by the court] `misleading or confusing' and, viewed in the context of the charge as a whole, [the court's definition] `correctly convey[ed] the concept of reasonable doubt.'"); United States v. Mahabir, 1997 WL 297498, at *5 (4th Cir. June 4, 1997) (per curiam) (holding that the FJC definition of reasonable doubt offered by the district court was a "cogent" statement of the reasonable doubt standard).

19

sideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you are not firmly convinced of his guilt, you must find him not guilty.

The sole distinction between the instruction suggested here and that sponsored by the FJC lies in the last sentence thereof. In its closing sentence, the FJC instruction provides:

If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

I would amend this provision to make its language consistent with the penultimate sentence of the FJC instruction. I am convinced that consistency is the best approach, and I find further support in <u>United States v. Porter</u>, 821 F.2d 968 (4th Cir. 1987), where we criticized the "real possibility" aspect of the FJC instruction. In <u>Porter</u>, the district court had charged the jury in accordance with the FJC instruction. On appeal, the defendants challenged the "real possibility" language of the instruction, arguing that it was confusing and improperly shifted the burden of proof. While concluding that the district court's instructions taken as a whole properly placed the burden of proof on the prosecution, we criticized the "real possibility" terminology, writing that,

Implying the evidence must show a <u>real possibility</u> of innocence to justify acquittal trenches on the principle that a defendant is presumed to be innocent.

<u>Id.</u> at 973 (emphasis added). Judge Butzner's criticism of the "real possibility" language is persuasive, and I have concluded that the slight modification of the FJC instruction, explained above, would render it of greater assistance to perplexed jurors.

I am not alone in this conclusion; indeed, a virtually identical modification of the FJC instruction has been endorsed in a recent publication of the Texas Law Review. Lawrence M. Solan, <u>Refocusing the Burden of Proof in Criminal Cases: Some Doubt About Reasonable</u>

20

Doubt, 78 Tex. L. Rev. 105 (1999). In his detailed and astute analysis of various issues relating to reasonable doubt instructions, Professor Solan recognizes the merits of this modification, writing,

> The [modified FJC] instruction reminds jurors that not every doubt is a reasonable one. But its main focus is to tell the jurors that the real issue is whether the government has made a strong, convincing case. It is marginally superior to the FJC's instruction [because it eliminates the"real possibility" language that tends to shift the burden of proof, as recognized by Porter].

Id. at 118. Moreover, as Professor Solan points out, the Supreme Court of New Jersey has adopted a definition of reasonable doubt nearly indistinguishable from the one I propose today. See State v. Medina, 685 A.2d 1242, 1251-52 (N.J. 1996). **9** Professor Solan explains that, by eliminating the "real possibility" language, the New Jersey instruction avoids the tendency of the FJC instruction to shift the burden of proof. Solan, 78 Tex. L. Rev. at 118. **10**

In my view, this modified FJC instruction effectively and adequately conveys the meaning of reasonable doubt in clear and concise terms. While eliminating the concerns raised by Judge Butzner in

_____

**9** The last sentence of the instruction adopted by the New Jersey court in Medina reads, "If, on the other hand, you are not firmly convinced of defendant's guilt, you must give defendant the benefit of the doubt and find him not guilty." Id. at 1252.

**10** In this regard, Professor Solan thus recommends that the FJC instruction, as modified by the court in Medina, be adopted and given by those courts that have not yet done so, arguing that the superiority of this instruction stems

> not from its semantic fidelity to the reasonable doubt standard but from its greater success in promoting important values. To lose sight of this point is to accept a formulaic approach to our system of criminal justice rather than an approach that recognizes the values that led to the adoption of the reasonable doubt standard in the first place.

Id. at 145.

21

Porter, this modified instruction maintains the positive features of the FJC instruction. In particular, the proposed instruction continues to

> inform[ ] the jurors that the prosecution must prove its case by more than a mere preponderance of the evidence, but not necessarily to an absolute certainty. . . . [Contrasting the preponderance of the evidence standard and the beyond a reasonable doubt standard] is a useful way to frame the issue for the jury.

Williams, 20 F.3d at 132 n.5. It is this feature, the juxtaposition of the requisite standard of proof in civil cases with the more stringent criminal trial standard of proof beyond a reasonable doubt, that is the FJC instruction's greatest asset. As the Fifth Circuit in Williams pointed out, contrasting the civil and the criminal standards of proof is an effective means of framing the issue for the jury. While making clear that "reasonable doubt" is a higher standard of proof than that necessary in civil cases, the instruction does not unduly disadvantage the prosecution; it clearly states that proof beyond a reasonable doubt "does not require proof that overcomes every possible doubt."

Furthermore, the modified FJC instruction ensures that the government's obligation to carry the burden of proof beyond a reasonable doubt is properly understood by jurors. The language of this instruction thus focuses "on what the government must do-- not on what the defendant has been able to accomplish. It tells jurors not to accept the government's model unless they are convinced that it is the right one." Solan, 78 Tex. L. Rev. at 144.

Accordingly, I find this slightly modified FJC instruction to be a cogent and comprehensible statement of the reasonable doubt standard. Because I believe this definition of reasonable doubt to be a fully acceptable instruction, and vastly preferable to none at all when the jury has requested assistance, I would approve its use under the limited circumstances at issue here.**11**

_____

**11** The "hesitate to act" instruction suggested by Judge Widener, ante at 11, is also a suitable alternative, even though that particular instruction has been subject to criticism. See Victor, 511 U.S. at 24-25 (Ginsburg, J., concurring in part and concurring in the judgment). Likewise, giving the FJC instruction in its original form would be a far superior practice than simply ignoring a perplexed jury's request.

22

IV.

The integrity of the judicial process requires that the appropriate standard of proof be scrupulously applied by criminal trial juries; hence, an adequate understanding by juries of the reasonable doubt standard is necessary for our system to function properly. To ensure the rigorous application of the proper standard of proof in our criminal justice system, I would require that trial courts define reasonable doubt in the limited circumstances presented in this case, that is, when the jury has explicitly requested a definition. **12** Because the district court failed to provide such a definition in response to the jury's request, I find reversible error.**13**

_____

**12** The Supreme Court's recent decision in <u>Weeks v. Angelone</u>, 120 S. Ct. 727 (2000), does not impact the views expressed in this opinion. <u>Weeks</u> involved a habeas corpus petitioner who sought relief from his state court conviction and death sentence. As such, the petitioner was obliged to demonstrate a violation of clearly established Federal law to be entitled to relief. <u>See</u> 28 U.S.C.A. § 2254(d)(1) (West 1994 & Supp. 1999). The specific issue before the Court was whether "the Constitution is violated when a trial judge directs a capital jury's attention to a specific paragraph of a constitutionally sufficient instruction in response to a question regarding the proper consideration of mitigating circumstances." <u>Id.</u> at 729. Finding no constitutional violation, the Court denied relief.

By contrast, our ability to find error in this case is not confined to constitutional violations because, in evaluating the propriety of reasonable doubt instructions, "the Constitution is not our only benchmark." <u>Williams</u>, 20 F.3d at 128. Even if the district court's refusal to define reasonable doubt in response to the jury's request does not run afoul of the Constitution, we may find error "if we are persuaded that the district court's jury instruction is not acceptable." <u>Id.</u> Our basis for doing so rests in the inherent supervisory powers of federal courts, pursuant to which we "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress . . . . to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury." <u>United States v. Hasting</u>, 461 U.S. 499, 505 (1983). Pursuant to the inherent supervisory power of this Court, we should require district courts to define reasonable doubt when presented with a jury request to do so.

**13** Since I would establish a new rule for criminal prosecutions requiring district courts in this Circuit to define reasonable doubt when

23

I am honored to state that Judge Murnaghan, Judge Wilkins, and Judge Traxler concur in this dissenting opinion.

HAMILTON, Senior Circuit Judge, dissenting:

Of all the rights enjoyed by a criminal defendant, the right to be found guilty upon proof beyond a reasonable doubt is undoubtedly one of the most important. The right ensures that our criminal justice system separates those who are guilty from those who are innocent. See In re Winship, 397 U.S. 358, 363-64 (1970).

To be effective, that is, to fulfill its obligation to separate the guilty from the innocent, the term reasonable doubt must have a comprehendible meaning, one that can be understood by the jury. Therefore, the term reasonable doubt must be defined with accuracy to ensure that it is applied with precision. Without this safeguard, the jury is left to apply its own definition; thus, we risk the possibility that the jury will apply the wrong standard, potentially convicting a criminal defendant on less proof than that required by the Constitution.

Judge Ervin feels that the term reasonable doubt should not be defined because defining the term reasonable doubt "is more dangerous than leaving a jury to wrestle with only the words themselves." Ante at 8. Thus, Judge Ervin leaves it to the jury to create its own definition, applying its day-of-deliberations "definition to the specific case before it." Ante at 9. I simply fail to see the logic in Judge Ervin's approach.

It makes eminently more sense to define the term reasonable doubt in a jury charge as a matter of course, just as district courts typically define other terms such as knowingly, willfully, and intentionally. When the term reasonable doubt is defined we avoid, if not eliminate, the risk that a criminal defendant will be convicted on less evidence

_____

requested to do so by the jury, I am compelled to vote to reverse the convictions in this case and remand for retrial. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987) (holding that new rules for criminal prosecutions must be applied retroactively to all cases not yet final, including cases pending on direct appeal).

24

than is constitutionally required. This benefit far outweighs any attendant problems associated with defining the term reasonable doubt.

In In re Winship, the Supreme Court explained that any "society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." 397 U.S. at 363-64. I simply see no way of achieving this laudable goal other than by giving the jury an instruction that cogently and accurately defines the term reasonable doubt. I would, therefore, require one, such as the one approved by the Federal Judicial Center in 1987, as a matter of course. Consequently, I would find reversible error in this case. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987).

25