THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MILDRED L. LAUGHARN, Defendant-Appellant.

Fourth District    No. 4—97—0031

Opinion filed July 22, 1998.

Daniel D. Yuhas and Janieen R. Tarrance, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles Colburn, State's Attorney, of Jacksonville (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

In April 1995, defendant Mildred Laugharn shot and killed her husband, Robert Laugharn, in their home. She was indicted by a grand jury for the offenses of first degree murder and involuntary manslaughter. 720 ILCS 5/9—1, 9—3 (West 1994). A jury trial was held in November 1996.

Mildred testified she shot her husband in self-defense. She claimed he had a drinking problem and had been drinking beer the night of the shooting. Mildred also had a couple of mixed alcohol drinks that night. They were watching television and had a dispute over the

thermostat. Robert became upset when Mildred tried to turn the thermostat down. He slapped her in the face and told her to "get out." Mildred went into the kitchen. On her way to the kitchen, she saw Robert sitting in his reclining chair with a gun. She was terrified and felt there was no place she could go. She believed she could "talk Bob out of this," so she approached him and carefully tried to take his gun.

Mildred testified they struggled for the gun before she finally got hold of it. Robert was angry and got out of the chair. She thought he would take the gun and shoot her, so she fired the gun. After firing three times, she threw the gun down and walked out of the room, not knowing if Robert was injured. She came back and realized Robert was hurt. She called her neighbors, placed the gun on the coffee table, and went outside to wait for the neighbors.

Mildred's neighbors, Frank and Helen Burnett, both testified that Mildred called that night and said "she thought she'd shot Bob." They went to Mildred's house and she explained what happened. She told them essentially the same story she told at trial, except she told Helen that Robert had fired two shots at her first. The Burnetts testified Mildred's hair and clothing were not disturbed and the living room showed no signs of a struggle. While on the stand, Frank was presented a photograph of the crime scene that indicated the recliner Robert was sitting in had been moved slightly. Frank did not notice the chair had been moved before.

Officer Randy Duvendack spoke with Mildred the night of the shooting. He noticed nothing unusual about her appearance. Mildred told Officer Duvendack that her husband slapped her after a fight over the thermostat. She left the room, then returned, and he had a gun and threatened to kill her. She ran toward the door and he fired two shots at her. She then charged him, knocked him over after a brief struggle, and got the gun. He walked back toward the recliner, she shot him once, and he fell into the chair.

At trial, Mildred explained that she lied at first because she panicked. She was afraid no one would believe the truth. She testified she was now telling the truth.

Several officers investigated the shooting. Robert was found sitting in the recliner with a gun wound to the abdomen. A cigarette lay at his feet and an undisturbed cigarette ash was located below Robert's hand beside the chair. Woodchips from the ceiling were found on his shoulder and the floor around him, but none were found underneath his body. A bullet hole was found in a ceiling beam above and slightly forward of where Robert was sitting, and another hole was found in a humidifier behind Robert. The bullet hole on the beam had an entry defect on the north side and an exit defect on the bottom.

A firearm examination expert testified the path of the bullet through Robert's body was consistent with his being shot from at least a few feet away while in a reclining position, although it was also consistent with a person firing a gun from an area lower than Robert's abdomen. Robert's blood-alcohol level was .247, 2½ times the legal limit for driving.

The jury found defendant guilty of first degree murder. She was sentenced to 28 years' imprisonment with 3 years' mandatory supervised release.

On appeal, defendant contends the prosecutor made improper statements during his closing argument. First, she argues he committed reversible error by trying to define reasonable doubt. The prosecutor stated:

"Now, we must prove to you the elements of this offense of first degree murder and all of these elements beyond a reasonable doubt. *Now, that's not beyond all doubt or any doubt, but beyond a reasonable doubt. A doubt with some reason to it. Now, that's not some mythical, unattainable standard that can't be met.* It's met in courtrooms throughout the country every day, and we've met [it] in here in this courtroom this week." (Emphasis added.)

In addition, defendant argues the prosecutor erred in rebuttal closing argument by implying that defense counsel was trying to misdirect or confuse the jury. The prosecutor stated:

"But first of all, what if the chair had been moved at some time? So what. Did she ever say the chair was moved during the struggle? No. All right. *This is just Mr. Metnick's speculation, another little misdirection play here.* Keep your eye on the ball. There's no evidence this chair was moved, so what is that impression?" (Emphasis added.)

Later, the prosecutor said:

"[N]ow, Mr. Metnick wants to do a kind of night is day, black is white, entry is exit kind of flip flop for you here in trying to explain another reason that makes her story physically impossible, and that is the bullet holes in the beam."

Defendant argues these comments were reversible error, substantially prejudiced her, and we should reverse her conviction.

■■ ■ The State contends defendant has waived this issue for appeal because she did not object to these comments at trial or in her posttrial motion. To preserve an issue for review, a litigant must object at trial to the alleged error and make a written posttrial motion raising the issue. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). We will review issues raised for the first time on appeal only if the record reflects "plain error." *People v. Fetter*, 227 Ill. App. 3d 1003, 1007, 591 N.E.2d 474, 476 (1992). Plain error exists when an

error deprives the defendant of a fair and impartial trial or any substantial error that occurs in cases where the evidence is closely balanced. *People v. Schmidt*, 168 Ill. App. 3d 873, 878, 522 N.E.2d 1317, 1320 (1988). Improper jury summations can constitute plain error if the commentary has the effect of undermining the entire trial. *People v. Keene*, 169 Ill. 2d 1, 23, 660 N.E.2d 901, 912 (1995). The reviewing court may consider the cumulative effects of the prosecutor's comments when considering the prejudicial impact on defendant. *People v. Quiver*, 205 Ill. App. 3d 1067, 1072, 563 N.E.2d 991, 995 (1990).

■ *People v. Sandham*, 276 Ill. App. 3d 86, 91, 657 N.E.2d 719, 723 (1995), *rev'd on other grounds*, 174 Ill. 2d 379, 673 N.E.2d 1032 (1996), contains the following alternate holding:

> "In addition, defendant did not contend in his original brief that the error amounts to plain error. (134 Ill. 2d R. 615(a).) Defendant did argue plain error in the reply brief, but arguments not raised in the appellant's original brief may not be raised in the reply brief or at oral argument."

In the present case, defendant raised and discussed the issue of the prosecutor's closing argument in his original brief. The State addressed that issue in its brief but also asserted that the issue had been waived. In his reply brief, defendant for the first time argued that if the issue had been waived we should address it as plain error. We decline to apply any reply brief/waiver rule in this situation, where it could not be expected that defendant would use the term "plain error" in his original brief, and the State had an opportunity to discuss the underlying issue in its brief.

■ Even when the underlying issue is not raised in the original brief it may be appropriate in some cases to consider the issue as plain error and to allow the State to respond to the issue in a supplemental brief if necessary. We should be reluctant to find waiver where our doing so will threaten the integrity of the judicial process. *People v. McNeal*, 175 Ill. 2d 335, 364, 677 N.E.2d 841, 855 (1997) (plain error applicable when necessary to preserve integrity of judicial process).

■ Generally, attempts by counsel to explain the reasonable doubt standard are disfavored because, "no matter how well-intentioned, the attempt may distort the standard to the prejudice of the defendant." *Keene*, 169 Ill. 2d at 24-25, 660 N.E.2d at 913. However, both the prosecutor and defense counsel are entitled to discuss reasonable doubt and to present his or her view of the evidence and to suggest whether the evidence supports reasonable doubt. *People v. Carroll*, 278 Ill. App. 3d 464, 467, 663 N.E.2d 458, 460-61 (1996). In *Carroll*, this court held it was not improper when the prosecutor stated:

> " 'Now, we need to prove beyond a reasonable doubt that this

Defendant committed the offenses of first degree murder. It's not beyond all doubt or any doubt, but beyond a reasonable doubt, a doubt that has reason behind it. That's not some mythical, unattainable standard that can't be met. That standard is met every day in courtrooms ***.' " *Carroll*, 278 Ill. App. 3d at 466, 663 N.E.2d at 460.

■ The prosecutor's statements in *Carroll* are almost identical to the prosecutor's statements here. We agree with *Carroll* and hold the prosecutor's statements did not rise to the level of plain error. The statements did not deprive defendant of a fair trial or undermine the entire trial. The average jury understands the concept of reasonable doubt and is not contaminated when it hears the prosecutor say that *reasonable* doubt has *reason* behind it and is an attainable standard, which incidentally, are accurate statements.

■ Defendant also argues the prosecutor improperly suggested that defense counsel was engaged in a "another little misdirection play here," with respect to the recliner, and "wants to do a kind of *** entry is exit kind of flip flop for you here," with respect to the bullet holes in the beam. Generally, it is improper for a prosecutor to make statements disparaging the integrity of defense counsel and implying that the defense presented was fabricated at the direction of counsel. *People v. Rice*, 234 Ill. App. 3d 12, 26, 599 N.E.2d 1253, 1263 (1992).

The prosecutor's comments did not constitute plain error. The cases relied on by defendant involve much more disparaging comments by the prosecutor. See *People v. Starks*, 116 Ill. App. 3d 384, 394, 451 N.E.2d 1298, 1305 (1983) (prosecutor repeatedly characterized defense as a "pack of lies" and cautioned jury not to be "hoodwinked" or "fooled"); *People v. Emerson*, 97 Ill. 2d 487, 497, 455 N.E.2d 41, 45 (1983) (prosecutor accused defense counsel of setting up smokescreen " 'composed of lies and misrepresentations and innuendoes,' " and tried to " 'dirty up the victim' "). Here, the prosecutor's comments were not improper because they merely were responses to defense counsel's attempts to focus on theories that were backed by little or no evidence. See *People v. Smith*, 154 Ill. App. 3d 837, 849, 507 N.E.2d 543, 552 (1987). Because an attorney is allowed great latitude in closing arguments (*Quiver*, 205 Ill. App. 3d at 1072, 563 N.E.2d at 995) and because the comments did not prejudice defendant to the point where her entire trial was undermined, we conclude plain error did not exist. We find that the evidence weighed heavily against defendant and any error was harmless.

For the above reasons, we affirm defendant's conviction and sentence.

Affirmed.

GARMAN, P.J., and GREEN, J., concur.