**Mildred L. LAUGHARN, Petitioner,**

v.

**Augusta SCOTT, Jr., Warden, Logan Correctional Center, Respondent.**

No. 00–3311.

United States District Court, C.D. Illinois, Springfield Division.

May 15, 2001.

Jon Gray Noll, Noll Law Office, Springfield, IL, for petitioner.

Michael Hoard, Office of Ill. Atty. Gen., Chicago, IL, for respondent.

## OPINION

RICHARD MILLS, District Judge.

A tragic set of circumstances.

But the jury disbelieved Petitioner's version of the facts.

Petition for a writ of habeas corpus is denied.

## I. FACTS[1]

In April 1995, defendant Mildred Laugharn shot and killed her husband, Robert Laugharn, in their home. She was indicted by a grand jury for the offenses of first degree murder and involuntary manslaughter. 720 ILCS 5/9–1, 9–3 (West 1994). A jury trial was held in November 1996.

Mildred testified she shot her husband in self-defense. She claimed he had a drinking problem and had been drinking beer the night of the shooting. Mildred also had a couple of mixed alcohol drinks that night. They were watching television and had a dispute over the thermostat. Robert became upset when Mildred tried to turn the thermostat down. He slapped her in the face and told her to "get out." Mildred went into the kitchen. On her way to the kitchen, she saw Robert sitting in his reclining chair with a gun. She was terrified and felt there was no place she could go. She believed she could "talk Bob out of this", so she approached him and carefully tried to take his gun.

Mildred testified they struggled for the gun before she finally got hold of it. Robert was angry and got out of the chair. She thought he would take the gun and shoot her, so she fired the gun. After firing three times, she threw the gun down and walked out of the room, not knowing if Robert was injured. She came back and realized Robert was hurt. She called her neighbors, placed the gun on the coffee table, and went outside to wait for the neighbors.

Mildred's neighbors, Frank and Helen Burnett, both testified that Mildred called that night and said "she thought she'd shot Bob." They went to Mildred's house and she explained what happened. She told them essentially the same story she told at trial, except she told Helen that Robert had fired two shots at her first. The Burnetts testified Mildred's hair and clothing were not disturbed and the living room showed no signs of struggle. While on the stand, Frank was presented a photograph of the crime scene that indicated the recliner Robert was sitting in had been moved slightly. Frank did not notice the chair had been moved before.

Officer Randy Duvendack spoke with Mildred the night of the shooting. He noticed nothing unusual about her appearance. Mildred told Officer Duvendack that her husband slapped her after a fight over the thermostat. She left the room,

---

1. Title 28 U.S.C. § 2254 requires federal courts to give deference to the factual determinations made by all state courts (whether the findings are made by trial or appellate courts) and to presume the state courts' findings of fact to be correct. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In the present case, Petitioner

has not rebutted the presumption of correctness by clear and convincing evidence. In fact, Petitioner does not challenge the state court's factual findings whatsoever. Therefore, the Court's factual findings are based upon the facts as stated in the Illinois Appellate Court for the Fourth District's published opinion entered July 22, 1998, which this Court will repeat verbatim for ease of reference. *People v. Laugharn*, 297 Ill.App.3d 807, 808–10, 698 N.E.2d 219, 220–21, 232 Ill.Dec. 381, 382–83 (1998).

then returned, and he had a gun and threatened to kill her. She ran toward the door and he fired two shots at her. She then charged him, knocked him over after a brief struggle, and got the gun. He walked back toward the recliner, she shot him once, and he fell into the chair.

At trial, Mildred explained that she lied at first because she panicked. She was afraid no one would believe the truth. She testified she was now telling the truth.

Several officers investigated the shooting. Robert was found sitting in the recliner with a gun wound to the abdomen. A cigarette lay at his feet and an undisturbed cigarette ash was located below Robert's hand beside the chair. Woodchips from the ceiling were found on his shoulder and the floor around him, but none were found underneath his body. A bullet hole was found in a ceiling beam above and slightly forward of where Robert was sitting, and another hole was found in a humidifier behind Robert. The bullet hole on the beam had an entry defect on the north side and an exit defect on the bottom.

A firearm examination expert testified the path of the bullet through Robert's body was consistent with him being shot from at least a few feet away while in a reclining position, although it was also consistent with a person firing a gun from an area lower than Robert's abdomen. Robert's blood-alcohol level was .247, 2½ times the legal limit for driving.

The jury found defendant guilty of first degree murder. She was sentenced to 28 years' imprisonment with 3 years' mandatory supervised release. *Id.*

## II. PETITIONER'S CLAIMS

Petitioner raises four grounds as a basis for the instant petition.

*First*, Petitioner argues that the prosecutor's discovery violation violated her due process rights and her right to a fair trial. Prior to the start of her trial, the trial court entered an order requiring the prosecutor to disclose to Petitioner any document which the prosecution intended on presenting or using at trial. However, the prosecutor did not disclose or make available her husband's last will and testament and petition for probate (which established a financial motive for the shooting) to her until the prosecutor used the documents to cross-examine her. Petitioner contends that this untimely disclosure and violation of the trial court's discovery order denied her Fifth and Fourteenth Amendment rights to due process and to a fair trial.

*Second*, Petitioner claims that certain statements made by the prosecutor during his closing argument prejudiced her and constituted reversible error. Specifically, Petitioner asserts that the prosecutor improperly attempted to define reasonable doubt and improperly implied that defense counsel was trying to misdirect and/or confuse the jury. Accordingly, Petitioner argues that she is entitled to a new trial based upon this prosecutorial misconduct.

*Third*, Petitioner contends that she was denied her Sixth Amendment right to receive effective assistance of both trial and appellate counsel. Petitioner argues that she failed to receive effective assistance of trial counsel in that (1) her trial counsel failed to object to the prosecutor's use of her husband's last will and testament and petition for probate during his cross-examination of her; (2) her trial counsel failed to discuss with her, suggest the use of, and tender a lesser included offense jury instruction which would have allowed the jury to find her guilty of second degree murder; and (3) her trial counsel failed to call her expert witness[2] to testify and, at a

---

**2.** Petitioner obtained the services of Dr. Daniel Brown, a toxicologist, who, if he had been

called to testify, would have testified that Peti-

minimum, failed to make an offer of proof to the trial court regarding her expert's testimony. In addition, Petitioner asserts that she received ineffective assistance of appellate counsel because her appellate counsel failed to raise these issues on appeal.

*Fourth,* Petitioner contends that the State's evidence was insufficient to find her guilty of first degree murder beyond a reasonable doubt.

## III. ANALYSIS[3]

### A. *EXHAUSTION*

■■■ Initially, the Court notes that Petitioner has exhausted all of her state court remedies. As United States District Judge David F. Hamilton explained last year:

Although the requirement of exhausting available state remedies and the doctrine of procedural default are closely related and are often addressed together, there is an important difference between them. To determine whether a claim has been exhausted, the question is whether any meaningful state remedies are still available at the time of the federal petition. *Engle v. Isaac,* 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *accord, Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989)("the requisite exhaustion may nonetheless exist, of course, if it is clear that respondent's claims are now procedurally barred under Pennsylvania law"); *Teague v. Lane,* 489 U.S. 288, 297–298, 109 S.Ct. 1060,

103 L.Ed.2d 334 (1989). Thus, even though a claim was never presented to the state courts (at least as a constitutional claim), state remedies for the claim can be exhausted for purposes of § 2254(b) if it is clear that the doors of the state courts are no longer open to consider the claim. In such cases, even if a claim was procedurally defaulted in the state courts, the exhaustion requirement is satisfied because there are no longer remedies available for the petitioner to exhaust. *See Gray v. Netherland,* 518 U.S. 152, 161, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996)(because exhaustion requirement refers only to remedies still available at the time of the federal petition, it is satisfied if it is clear the petitioner's claims are now procedurally barred under state law); *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Engle v. Isaac,* 456 U.S. at 125–26 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783.

*Watkins v. Miller,* 92 F.Supp.2d 824, 831 (S.D.Ind.2000). Although Petitioner did not file a petition for leave to appeal with the Illinois Supreme Court seeking leave to appeal the Illinois Appellate Court for the Fourth District's denial of her direct appeal, the time for doing so has expired. *See* Illinois Supreme Court Rule 315(b)(providing that "a party seeking leave to appeal must file the petition for leave in the Supreme Court within 21 days after entry of the judgment of the Appellate Court. . . ."). Thus, Petitioner has satisfied the exhaustion requirement be-

tioner's husband's blood alcohol content level indicated that he was an alcoholic and that alcoholics are able to develop a higher tolerance and are able to function even though they are impaired. Furthermore, Dr. Brown would have testified that Petitioner's husband's judgment would have been grossly impaired on the night of his death and that heavy alcohol use can lead to a deterioration of judgment, a loss of self-control, a loss of

inhibition, exaggerated ego, and violent tendencies not present when that person is sober.

**3.** To the extent that Petitioner bases her habeas corpus petition upon the Illinois Constitution, her claims are not cognizable. *See Robertson v. Hanks,* 140 F.3d 707, 712 (7th Cir. 1998); *Bloyer v. Peters,* 5 F.3d 1093, 1098 (7th Cir.1993).

cause there are no longer any state law remedies available for her to exhaust. *Watkins,* 92 F.Supp.2d at 831.

### B. *PROCEDURAL DEFAULT*

█] However, Petitioner has procedurally defaulted all of her claims. Specifically, Petitioner has procedurally defaulted her claims by failing to raise them on direct appeal in a petition for leave to appeal to the Illinois Supreme Court. In Illinois, in order to avoid procedural default both direct appeals and petitions for post-conviction relief must be appealed all the way to the Supreme Court of Illinois. *Cawley v. DeTella,* 71 F.3d 691, 694 (7th Cir.1995); *Jenkins v. Gramley,* 8 F.3d 505, 508 (7th Cir.1993). As noted *supra,* Petitioner did not file a petition for leave to appeal to the Illinois Supreme Court challenging the Illinois Appellate Court for the Fourth District's denial of her direct appeal. Accordingly, she has procedurally defaulted her claims.[4] *See O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)(holding that the failure to present federal habeas claims to the Illinois Supreme Court first resulted in a procedural default of those claims); *see also Rodriguez v. Scillia,* 193 F.3d 913, 916 (7th Cir.1999)(holding that "[i]f a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted."); *but see Cawley,* 71 F.3d at 695 n. 6 (noting that the petitioner's failure to file a direct appeal with the Illinois Supreme Court did not affect the decision because "[t]here is no comity issue or independent and adequate state ground if a state chooses to ignore or forgive noncompliance with its own rules.").

"If a petitioner procedurally defaulted on his claim in the state court, a federal court may not grant habeas relief unless the petitioner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Anderson v. Cowan,* 227 F.3d 893, 899–900 (7th Cir.2000), quoting *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court held that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 488, 106 S.Ct. 2639. Moreover, "[t]he Supreme Court has explained that to demonstrate 'prejudice' under the cause and prejudice standard, a defendant must 'shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Ouska v. Cahill–Masching,* 246 F.3d 1036, 1049–50 (7th Cir.2001), quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

In the instant case, Petitioner has not even attempted to establish cause or prej-

---

4. In addition, an argument could be made that Petitioner procedurally defaulted her claims by failing to present the federal nature of her claims to the state courts. *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir.2001); *Moleterno v. Nelson,* 114 F.3d 629, 634 (7th Cir. 1997); *Verdin v. O'Leary,* 972 F.2d 1467, 1474 (7th Cir.1992). Although it is true that Petitioner referenced the Fifth, Sixth, and Four-

teenth Amendments to the United States Constitution and cited *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in her appeal to the Illinois Appellate Court and to the Illinois Supreme Court (in her appeal of the denial of her post-conviction petition), she failed to provide any analysis as to how her federal constitutional rights were violated under the facts of her case.

udice for procedurally defaulting her claims. *See Wilson v. Briley*, 243 F.3d 325, 329 (7th Cir.2001)(noting that the petitioner was not entitled to habeas relief because he had not attempted to establish cause and prejudice). Courts are not required to construct legal arguments for litigants, especially those represented by counsel. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir.1993). Accordingly, the Court finds that Petitioner is not entitled to a writ of habeas corpus because she has procedurally defaulted all of the grounds asserted in her § 2254 petition in support of habeas relief and because she has not established cause or prejudice for her procedural default.

### C. FUNDAMENTAL MISCARRIAGE OF JUSTICE

 Furthermore, the Court notes that letting Petitioner's conviction and sentence stand would not result in a "fundamental miscarriage of justice." *Murray*, 477 U.S. at 495, 106 S.Ct. 2639. Granting habeas relief based upon a finding of a "fundamental miscarriage of justice" is reserved for extraordinary cases. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Here, Petitioner has failed to show—or even allege—actual innocence, as opposed to legal innocence. *Spreitzer v. Schomig*, 219 F.3d 639, 648 (7th Cir.2000). Accordingly, the Court finds that Petitioner is not entitled to habeas relief based upon a fundamental miscarriage of justice.

### D. MERITS

 Finally, the Court notes that, even if her claims were not barred by procedural default, Petitioner would not be entitled to the relief which she seeks. Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In her petition, Petitioner has failed to cite any state court decision which was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court. In fact, other than *Strickland*, Petitioner did not cite a single federal case in support of her § 2254 petition.

In addition, Petitioner has failed to establish that any state court decision was "unreasonable" as that term is used in § 2254(d). *See Williams v. Taylor*, 529 U.S. 362, 409–16, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)(O'Connor, J., concurring)(discussing what qualifies as an "unreasonable application" of law under § 2254(d)(1)). Therefore, even if the Court were to address the merits of her petition, Petitioner would not be entitled to the relief which she seeks.

*Ergo*, Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is DENIED.