NOTICE
Decision filed 11/08/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 170016-U

NO. 5-17-0016

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 15-CF-178 |
| | ) | |
| QUENTIN M. BAILEY, | ) | Honorable |
| | ) | Kimberly L. Dahlen, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We find that no amendment, constructive or otherwise, of the offense of first degree murder charged in the first superseding indictment occurred in this case and that the trial judge was in the better position to determine whether defense counsel was attempting to define reasonable doubt during his closing argument. We further find that defendant cannot challenge his convictions on the sole basis that they are legally inconsistent with an acquittal on another charge and that the trial court did not abuse its discretion in admitting evidence that defendant was in possession of a handgun three weeks prior to the murder.

¶ 2     Defendant, Quentin M. Bailey, was charged in a superseding indictment with first degree murder, forcible felony robbery, armed robbery, and unlawful possession of cannabis. On July 22, 2016, a jury convicted defendant of first degree murder and robbery. The jury also found that the State proved defendant had discharged a firearm that caused

1

death to another person during the commission of the offense of first degree murder. The jury found defendant not guilty of armed robbery and unlawful possession of cannabis. On December 19, 2016, defendant was sentenced to 60 years' imprisonment for first degree murder, with a 25 years' enhancement for the use of a firearm, resulting in an aggregate sentence of 85 years' imprisonment. No sentence was imposed for the robbery conviction under the one-act, one-crime doctrine.[1]

¶ 3      On direct appeal from his convictions and sentence, defendant argues that (1) he was denied his fifth and sixth amendment rights when the State presented evidence to prove intentional murder when the superseding indictment charged felony murder; (2) the trial court abused its discretion when it impeded defense counsel from arguing that the State's two incompatible theories of guilt constituted reasonable doubt; (3) guilty verdicts on first degree murder with a firearm and robbery are legally inconsistent with a not guilty verdict on armed robbery; and (4) the trial court abused its discretion when it admitted evidence that defendant was in possession of a handgun three weeks prior to the murder. For the following reasons, we affirm.

¶ 4                          I. BACKGROUND

¶ 5      Late in the evening on May 10, 2015, a vehicle drove to the emergency room at Memorial Hospital in Carbondale, Illinois, and dropped off a male shooting victim. The

---

[1]The one-act, one-crime doctrine holds that "[m]ultiple convictions are improper if they are based on precisely the same physical act. *** If they are, then multiple convictions are improper." *People v. Artis*, 232 Ill. 2d 156, 165 (2009).

victim was identified as Broderick Miller, who later died of a single gunshot wound to his back.

¶ 6     On May 27, 2015, a grand jury indicted defendant on the charge of first degree murder for the shooting death of Miller. The grand jury also indicted defendant on the charges of robbery and armed robbery. The State filed a first superseding bill of indictment on December 17, 2015, which added the charge of unlawful possession of cannabis. The matter proceeded to jury trial on July 18, 2016.

¶ 7     Two versions of the events leading to Miller's death were presented to the jury. The first version of events was primarily provided through the testimony of Leonard Bowen. Bowen, a felon with multiple drug convictions, was the driver of the vehicle that brought Miller to the hospital. According to Bowen's testimony, he and Miller had known each other since the seventh grade and were involved in the illegal cannabis trade together. Also, Bowen's sister and Miller had a child together.

¶ 8     On May 9, 2015, Bowen was in the parking lot of a bar speaking with an individual he knew to be Joe Garrison. They were discussing the purchase of controlled substances. Garrison was with defendant, who indicated he was interested in the purchase of cannabis. Defendant and Bowen exchanged cell phone numbers. The next day, Bowen spoke with defendant who indicated that he wanted to purchase a pound of cannabis. Bowen planned on obtaining the pound of cannabis from Miller and contacted Miller to make the arrangements. Bowen was instructed to meet Miller around 10:30 p.m. behind the Comfort Inn & Suites hotel in Carbondale, Illinois. That night, Garrison drove Bowen to meet with Miller. Along the way, they picked up defendant.

3

¶ 9    When they arrived at the hotel, Miller was seated in his vehicle. Bowen and defendant exited Garrison's car and got into Miller's vehicle. Bowen sat in the front passenger's seat and defendant sat in the rear seat, behind Miller. Also in the rear seat of Miller's vehicle was a child restraint seat with a plastic bag containing cannabis where the child would sit. Defendant stated that he wanted to check the quality of the cannabis. After examining the bag of cannabis, defendant pulled a pistol from the waistline of his pants and stated, "You all know what this shit is. This shit is mine. I need you to come up off everything." Then a shot was fired. Defendant said, "Oh, shit," opened the door of the vehicle, and ran out.

¶ 10    Miller indicated he had been shot and Bowen moved around the vehicle into the driver's seat. While changing seats, Bowen observed defendant pointing a pistol at Garrison and getting into Garrison's vehicle. When Bowen got into the driver's seat of Miller's vehicle, Miller was on the phone with Bowen's sister informing her that he had been shot. Miller then became unresponsive and Bowen drove him to the hospital. The State called two witnesses that supported Bowen's version of the events.

¶ 11    The second version of events regarding Miller's death was provided through the testimony of Mosezell Jones. Jones was a member of a violent street gang and had convictions for armed robbery, delivery of a controlled substance, and possession of a stolen vehicle. Because Jones was incarcerated at the time of his testimony, the trial court gave the following instruction prior to his testimony:

> "Ladies and gentlemen of the jury, the testimony that you're about to hear is of an in-custody informant. It should be viewed with caution and close scrutiny. This does not mean that you may arbitrarily disregard such testimony, but you

4

should give it the weight to which you find it to be entitled in the light of the evidence in this case."

¶ 12    Thereafter, Jones testified that he and defendant were incarcerated together from January 15, 2016, to March 2, 2016, at Menard Correctional Center. Jones stated they "kind of got a relationship so he started talking to me." Jones testified that defendant said a man by the name of Tyree Neal owed defendant money for "taking care of some business." Defendant also told Jones that Miller was a "rat" who was alleged to have assisted law enforcement against Neal. Defendant further stated that when Miller was shot, "he [defendant] got in the back seat. Mr. Miller reached down and handed him the weed and he shot him." Jones also testified that he was later incarcerated with Neal and that Neal admitted he had hired defendant to kill Miller. The State did not call Neal to testify and presented no other evidence regarding a murder-for-hire theory.

¶ 13    Two witnesses were called during the defense portion of the trial. The first witness was a City of Carbondale Police Department detective who was responsible for any follow-up investigation of the shooting. The detective testified that he had no personal knowledge of the events but that he had searched for evidence in the parking lot of the hotel and met with hotel staff to review video surveillance. The State did not cross-examine the detective. The second defense witness testified that defendant had lived with her from approximately January through April 2015. During that period, she did not permit defendant to leave the house after sunset. No further questions were asked by defense counsel and the State did not cross-examine the witness. The defense rested and the case proceeded to closing arguments.

5

¶ 14    During defense counsel's closing argument, the following colloquy occurred:

"[MR. PISSETZKY]: Ladies and gentlemen, what you have just witnessed in the past week was a diabolical choir with sheet music that were [*sic*] provided to them by the State. The State's problem, though, is that they sang a little bit out of key. Leo's [Bowen] testimony did not really tune up to that of Joe Garrison. And Snitching Jones that came to you from the jail, his pitch was completely off tune. I don't know exactly what he was trying to tell you, but that was a murder for hire, and how does that fit into the State's theory of the case is up for you to decide, ladies and gentlemen.

But I would submit to you that when the State comes before you and gives you two theories—and I'll talk about it—this is not a multiple choice test on an exam. This is not let's throw stuff on the wall and see which one sticks. This is a question of beyond a reasonable doubt, ladies and gentlemen. If you believe Jones, you cannot believe Leo and Garrison.

MR. CARR: I object. That's a misstatement of the law.

THE COURT: Ladies and gentlemen of the jury, counsel can argue but arguments of lawyers are not be taken as statements of the law. Instructions on the law will come from the Court after final arguments are completed.

MR. PISSETZKY: How could you believe Jones and Leo and Garrison because Leo and Garrison told you that Quentin Bailey didn't know Broderick Miller. Quentin Bailey had no idea who he's going to meet. Quentin Bailey, you heard testimony that actually told Leo to come over to his house. Snitching Jones, 'Quentin Bailey called Broderick Miller directly. Quentin Bailey set up a drug deal just so he could go and kill him. Murder for hire.' Ladies and gentlemen, if you believe one, you cannot believe the other. And that is reasonable doubt. Just by that, ladies and gentlemen, that is reasonable doubt that is a not guilty.

MR. CARR: Your Honor, that's a misstatement of the law.

MR. PISSETZKY: No, it's not.

MR. CARR: He's defining reasonable doubt.

MR. PISSETZKY: No, I'm not.

THE COURT: Ladies and gentlemen of the jury, in reference to what has just been said about reasonable doubt, that is to be ignored by you. Now proceed.

6

MR. PISSETZKY: Reasonable doubt, ladies and gentlemen, I cannot define to you. It's for you to decide what it is. And I'm not trying to decide for you or tell you how to define reasonable doubt. But I submit to you that when you have two completely different stories, that should raise doubt. And when it raises doubt, that's reasonable doubt.

MR. CARR: Objection. He's just defined reasonable doubt. I object and ask that it be stricken.

THE COURT: In reference to this, ladies and gentlemen, what reasonable doubt is, is not going to be defined for you. It is up to you to determine what reasonable doubt is. Continue, Counsel."

¶ 15    The jury entered deliberations at 3:45 p.m. on July 22, 2016. At 4:43 p.m. that same day, the jury sent the following question to the trial court: "Is the charge of first degree murder contingent on the finding of guilty for the robbery or armed robbery?" Defense counsel objected to any response by the trial court other than "Follow the jury instructions." Over defense counsel's objection, the trial court responded, "Yes for robbery. Please read the instructions." At 5:27 p.m., the trial court received a second question from the jury. It stated, "Can we state, one, robbery guilty, two, first degree murder guilty? One juror having trouble with all aspects. Still working on this." The trial court responded, "Please read the directions and continue deliberating. Please do not disclose to the court the breakdown of your voting." Neither party objected to the trial court's response to the second question.

¶ 16    The jury convicted defendant of first degree murder and robbery. The jury also found that the allegation that defendant discharged a firearm that caused death to another person during the commission of the offense of first degree murder was proven. The jury found defendant not guilty of armed robbery and unlawful possession of cannabis.

¶ 17                                    II. ANALYSIS

¶ 18                        A. Fifth and Sixth Amendment Rights

¶ 19    The first issue on appeal is whether defendant was denied his fifth amendment right to be informed of the nature of the accusation against him and his sixth amendment right to indictment by a grand jury when the State presented evidence seeking to prove intentional murder. "The standard of review for determining whether an individual's constitutional rights have been violated is *de novo.*" *In re Robert S.*, 213 Ill. 2d 30, 45 (2004).

¶ 20    Defendant argues that the difference between the felony murder offense for which he was indicted and the evidence presented at trial was so substantial that it amounted to a constructive amendment of the indictment. Specifically, defendant argues that the State broadened the parameters and constructively amended the superseding indictment when it presented the testimony of Jones to establish first degree intentional murder.

¶ 21    The first superseding bill of indictment filed on December 5, 2015, charged, in relevant part:

> "**FIRST DEGREE MURDER**—In that the defendant, (Quentin M. Bailey), while committing a forcible felony, robbery, in violation of Chapter 720, ILCS 5/18-1(a), without lawful justification, fired a .380[-]caliber handgun, thereby causing the death of Broderick Miller, all in violation of Illinois Compiled Statutes, Chapter 720, Section 5/9-1(a)(3)."

¶ 22    A defendant's fifth amendment rights are violated when a trial court constructively amends an indictment by instructing a jury on a charge not included in the indictment. *Stirone v. United States*, 361 U.S. 212, 217 (1960). An amendment is substantive and therefore improper if (1) it materially alters the charge and (2) it cannot be determined

8

whether the grand jury would have charged the alteration. *People v. Milton*, 309 Ill. App. 3d 863, 866 (1999).

¶ 23 According to defendant, the State put forth a complex set of facts at trial distinctly different from the facts set forth in the first superseding bill of indictment when it presented the testimony of Jones. However, Jones's version of the events was not totally inconsistent with the testimony of Bowen. Jones testified that defendant stated "he [defendant] got in the back seat. Mr. Miller reached down and handed him the weed and he shot him." The substantive difference between the testimony of Jones and the testimony of Bowen was that Jones testified that Neal hired defendant to kill Miller.

¶ 24 As the State correctly maintains, Jones's testimony was presented as evidence that defendant, by his own admission, shot and killed Miller. Jones's testimony was not presented as evidence of intentional murder as the State did not offer any other evidence concerning a murder-for-hire theory. Further, the jury instructions only pertained to first degree murder, as set forth in the first superseding indictment, and there were no instructions concerning intentional murder.

¶ 25 Specifically, the trial court gave the following instruction to the jury concerning the first degree murder charge:

> "A person commits the offense of first degree murder when he kills an individual if, in performing the acts which cause the death, he is committing the offense of robbery.
>
> To sustain the charge of first degree murder, the State must prove the following propositions:
>
> > *First Proposition*: That the defendant performed the acts which caused the death of Broderick Miller; and

9

*Second Proposition*: That when the defendant did so, he was committing the offense of robbery.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." Illinois Pattern Jury Instructions, Criminal, No. 7.02 (approved July 18, 2014).

¶ 26 Having reviewed the record and applicable legal precedent, we find that no amendment, constructive or otherwise, occurred in this case. Jones's testimony did not materially alter the first degree murder charge because his testimony was not totally inconsistent with the testimony of other witnesses and no other evidence of a murder-for-hire theory was presented. We also note that the trial court gave the appropriate instruction to the jury concerning the elements of murder as charged in the superseding indictment.

¶ 27                    B. Alternate Theories and Reasonable Doubt

¶ 28 Defendant next claims that the circuit court abused its discretion when it interfered with defense counsel's closing argument that two incompatible theories of guilt advanced by the State constituted reasonable doubt. Defendant argues that his counsel was not attempting to define reasonable doubt but was attempting to present his view of the evidence and to suggest whether the evidence supported reasonable doubt. As such, defendant maintains that the trial court improperly sustained the State's objections. Defendant further argues that the trial court should have repeated the instruction given after the State's first objection and should not have discredited defendant's theory of the case by instructing the jury to ignore a portion of the defense counsel's closing argument.

¶ 29 "Because the trial court is in a better position than a reviewing court to determine the prejudicial effect of any remarks made, the regulation of the substance and style of the argument is within the trial court's discretion." *People v. Simms*, 192 Ill. 2d 348, 396 (2000). Errors may be cured by the trial court giving the jury proper instructions on the law to be applied; informing the jury that arguments are not themselves evidence and must be disregarded if not supported by the evidence; or sustaining the defendant's objections and instructing the jury to disregard the inappropriate remark. *Id.* at 396-97. The trial court's determination of the propriety of the remarks will not be overturned absent an abuse of discretion. *Id.* at 397. An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 30 Illinois law is clear that neither party nor the court should attempt to define the reasonable doubt standard for a jury. *People v. Speight*, 153 Ill. 2d 365, 374 (1992). "However, both the prosecutor and defense counsel are entitled to discuss reasonable doubt and to present his or her view of the evidence and to suggest whether the evidence supports reasonable doubt." *People v. Laugharn*, 297 Ill. App. 3d 807, 811 (1998).

¶ 31 As indicated above, the trial court gave an instruction to the jury during defense counsel's closing argument, as follows:

"THE COURT: Ladies and gentlemen of the jury, in reference to what has just been said about reasonable doubt, that is to be ignored by you. Now proceed."

¶ 32 The trial court did not instruct the jury to ignore defense counsel's interpretation of the evidence; it instructed the jury to ignore what had been said about "reasonable doubt." The trial court also properly instructed the jury that the arguments of the attorneys were

not be taken as statements of the law; that the trial court would provide instructions on the law after final arguments; that reasonable doubt was not going to be defined; and that it was up to the jury to determine reasonable doubt.

¶ 33    There is no bright-line rule that establishes when a counsel's statement goes beyond a proper argument that the evidence supports reasonable doubt and turns into an improper attempt at defining reasonable doubt. The trial judge was present in the courtroom and in a better position to determine whether defense counsel was attempting to define reasonable doubt than this court. The trial judge was also in a better position to determine whether the jury could have perceived defense counsel's statement as a definition of reasonable doubt. "[T]he reviewing court must indulge in every reasonable presumption that the trial judge properly exercised the discretion vested in him." *Simms*, 192 Ill. 2d at 397.

¶ 34    We cannot find that the trial court's ruling was arbitrary, fanciful, unreasonable, or that no reasonable person would take the view adopted by the trial court. As such, we find that the trial court's determination of the propriety of defense counsel's remarks concerning reasonable doubt during his closing argument was not an abuse of discretion.

¶ 35                        C. Inconsistent Verdicts

¶ 36    The third issue defendant raises on appeal concerns a claim of inconsistent verdicts. Defendant argues that the jury's findings of guilty on the charges of felony murder and robbery are legally inconsistent with the jury's finding of not guilty on the charge of armed robbery because the jury found that defendant discharged a firearm during the commission of the murder. Defendant also argues that the jury's first note to the trial court during deliberations demonstrated that the jury was confused or exhibited a misunderstanding.

12

¶ 37    "Legally inconsistent verdicts occur when an essential element of each crime must, by the very nature of the verdicts, have been found to exist and to not exist even though the offenses arise out of the same set of facts." *People v. Frieberg*, 147 Ill. 2d 326, 343 (1992). Whether two verdicts are legally inconsistent presents a question of law and, therefore, our review is *de novo. Redmond v. Socha*, 216 Ill. 2d 622, 642 (2005).

¶ 38    In this case, defendant may not challenge his convictions on the sole basis that they are legally inconsistent with an acquittal on another charge. *People v. Jones*, 207 Ill. 2d 122, 133 (2003). The Illinois Supreme Court has rejected "the *Klingenberg* decision's central rationale that legally inconsistent verdicts are 'unreliable' and 'suggest confusion or misunderstanding on the part of the jury.' " *People v. McCoy*, 207 Ill. 2d 352, 357 (2003). As such, defendant's argument that the jury's first note to the trial court during deliberations demonstrated that the jury was confused or exhibited a misunderstanding no longer presents a valid argument.

¶ 39    We note that defendant relies on case law that predates the Illinois Supreme Court's decision in *Jones*, 207 Ill. 2d 122, 133 (2003), which overruled its previous holding in *People v. Klingenberg*, 172 Ill. 2d 270, 281-82 (1996) (that inconsistent verdicts rendered in the same proceeding could not stand because they were unreliable).

¶ 40    As stated above, defendant may not challenge his convictions on felony murder and robbery on the sole basis that they are inconsistent with his acquittal for armed robbery. Because defendant's arguments are based on the inconsistency between the findings of guilty and an acquittal, they must fail.

¶ 41                                    D. Evidence of Firearm

¶ 42    The final issue raised by defendant is whether the trial court abused its discretion when it admitted evidence that he was in possession of a firearm three weeks prior to the shooting death of Miller. The admission of evidence is within the sound discretion of a trial court, and a reviewing court will not reverse the trial court absent a showing of an abuse of that discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would agree with the position adopted by the trial court. *Id.*

¶ 43    Concerning evidence of other crimes, such evidence is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit a crime. Other-crimes evidence may be admitted to demonstrate *modus operandi*, intent, motive, identity, or absence of mistake with respect to the crime with which the defendant is charged. However, even where relevant, the evidence should not be admitted if its probative value is substantially outweighed by its prejudicial effect. *People v. Pikes*, 2013 IL 115171, ¶ 11.

¶ 44    On May 4, 2016, the circuit court granted the State's motion *in limine* to admit evidence that defendant possessed a semi-automatic pistol that he used to threaten individuals three weeks prior to Miller's death. According to the State, the evidence was relevant to the identification of defendant, his motive, which was to rob the victim, and his opportunity to do so, and that defendant had access to a handgun. The State also argued that the evidence was relevant to the type of gun used to shoot Miller.

¶ 45    Defendant argues that there was no credible evidence—ballistic, testimonial, or otherwise—that the gun defendant allegedly previously possessed was the same gun used

in Miller's death. Defendant further argues that admitting the evidence of the gun, even for the limited purpose of proving access or identity, was prejudicial to defendant as evidence of a prior bad act infers that defendant is a bad person and more likely to have committed the current crime. Defendant maintains that the State failed to demonstrate any degree of similarity between the evidence that defendant was in possession of a handgun three weeks before the incident and the weapon used to shoot Miller other than both weapons were black handguns.

¶ 46    The trial court's order granting the State's motion *in limine* to admit other-crimes evidence states that the "identity of the defendant and the weapon may be an issue" and that "[t]he court exercising its discretion finds that the prejudicial effect of the 'other crimes' evidence as requested to be introduced by the State does not substantially outweigh the probative value of this evidence as to the identity of the accused, his motive and intent." The trial court's order relied, in part, on *People v. Coleman*, 158 Ill. 2d 319, 335 (1994), in which the Illinois Supreme Court found that "[o]ther-crimes evidence [was] admissible to show that a defendant had access to guns similar to the one used in the charged crime."

¶ 47    As such, we find that the trial court did not abuse its discretion in granting the State's motion *in limine* and allowing evidence that defendant was in possession of a firearm three weeks prior to the Miller shooting.

¶ 48                                III. CONCLUSION

¶ 49    For the foregoing reasons, we affirm the judgment of the circuit court of Jackson County.

15

¶ 50   Affirmed.